# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CA-01265-COA

TIMOTHY B. MIXON                                                                              APPELLANT

v.

MISSISSIPPI DEPARTMENT OF                                                      APPELLEES
TRANSPORTATION AND ROBERT I. FULTON

| | |
|---|---|
| DATE OF JUDGMENT: | 06/05/2013 |
| TRIAL JUDGE: | HON. JAMES T. KITCHENS JR. |
| COURT FROM WHICH APPEALED: | NOXUBEE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | WILLIAM T. MAY |
| | KENNETH DUSTIN MARKHAM |
| ATTORNEY FOR APPELLEES: | KATHERINE S. KERBY |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| TRIAL COURT DISPOSITION: | GRANTED SUMMARY JUDGMENT IN FAVOR OF APPELLEES |
| DISPOSITION: | REVERSED AND REMANDED – 05/26/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE IRVING, P.J., ISHEE AND CARLTON, JJ.

### IRVING, P.J., FOR THE COURT:

¶1.     The Circuit Court of Noxubee County granted summary judgment in favor of the

Mississippi Department of Transportation (MDOT) pursuant to the Mississippi Tort Claims

Act (MTCA), specifically Mississippi Code Annotated section 11-46-9(1)(d) (Rev. 2012).[1]

In this appeal, this Court is called upon to decide whether the MTCA shields MDOT from

liability.  Finding that it does not, we reverse and remand for further proceedings.

---

[1] The circuit court granted summary judgment following its dismissal of Robert I.
Fulton, an original defendant and an MDOT employee.

FACTS

¶2.    On January 21, 2009, Robert and passenger Samuel Clark, both MDOT employees, while in the course and scope of their employment, drove an MDOT pickup truck in a southwestern direction on Mississippi Highway 21, a two-lane highway. Robert eventually parked the pickup near a sign located on the southwestern side of the highway so that he and Samuel could verify the sign's global-positioning-satellite (GPS) coordinates. To the northeast of the sign is a deep curve.

¶3.    At around 2 p.m., while the pickup was still parked near the sign, Timothy Mixon rounded the curve in a logging truck, traveling southbound at a speed of at least fifty-five miles per hour. Before reaching the pickup, Timothy maneuvered the logging truck from the southbound lane into the northbound lane but continued driving southbound. The exact position of the pickup at the time Timothy rounded the curve is in dispute. Timothy contends that the pickup was located partly in the southbound lane, while Robert contends that the pickup was parked completely on the west side of the southbound lane. In any event, as Timothy continued southbound, Robert, at some point, maneuvered the pickup into the northbound lane, and the two trucks collided. As a result of the collision, Samuel died, and Timothy and Robert suffered severe injuries.

¶4.    Following the accident, Timothy filed a complaint against Robert and MDOT. Thereafter, MDOT filed a motion for summary judgment, claiming immunity under

2

Mississippi Code Annotated section 11-46-9(1)(a), (d), and (e) (Rev. 2012).[2]  The circuit

court granted MDOT's motion, pursuant to section 11-46-9(1)(d), leading to this appeal.

## DISCUSSION

¶5.    The standard of review for summary-judgment motions is well settled:

> For a summary judgment motion to be granted there must exist no genuine
> issues of material fact and the moving party must be entitled to judgment as a
> matter of law.  We apply a de novo standard of review to a trial court's grant
> of summary judgment.  The moving party has the burden of demonstrating that
> no genuine issue of material fact exists, and the non-moving party must be
> given the benefit of the doubt concerning the existence of a material fact.

*Bryant v. Bd. of Supervisors of Rankin Cnty.*, 10 So. 3d 919, 921 (¶4) (Miss. Ct. App. 2008)

---

[2] This section provides:

> A governmental entity and its employees acting within the
> course and scope of their employment or duties shall not be
> liable for any claim:
>
> > (a) Arising out of a legislative or judicial action
> > or inaction, or administrative action or inaction of
> > a legislative or judicial nature;
> >
> > ****
> >
> > (d) Based upon the exercise of performance or the
> > failure to exercise or perform a discretionary
> > function or duty on the part of a governmental
> > entity or employee thereof, whether or not the
> > discretion be abused; [and]
> >
> > (e) Arising out of an injury caused by adopting or
> > failing to adopt a statute, ordinance or
> > regulation[.]

3

(internal citations and quotation marks omitted). Appellate courts review questions of immunity de novo. *City of Jackson v. Harris*, 44 So. 3d 927, 930 (¶19) (Miss. 2010) (citation omitted).

¶6. In his complaint, Timothy alleged that MDOT was liable for the accident because Robert had failed to: (1) exercise reasonable care, (2) keep a proper lookout, (3) keep the pickup in the proper lane, (4) yield the right-of-way, and (5) warn of a dangerous condition created by MDOT. After hearing the parties' arguments on the summary-judgment motion, the circuit court found:

> The Defendants have filed this motion[,] seeking summary judgment on the ground[] that they are immune from liability under the [MTCA] . . . because Mississippi law is clear that road maintenance is a discretionary function entitled to immunity.

> ****

> Having considered this argument, the [c]ourt finds that [Robert], at the time of the collision, was performing road maintenance while acting in the course and scope of his employment at MDOT.

> ****

> [Robert] was performing a task, however basic, necessary to the completion of road maintenance, immunizing [MDOT] from liability in this case.

¶7. On appeal, Timothy argues that "the [circuit] court erred in determining that [Robert's] driving a[n MDOT] vehicle while in the course and scope of his employment was a discretionary function[.]" Timothy also insists that Robert's role on the day of the collision was limited to driving the MDOT truck, while MDOT insists that Robert's act of operating

the MDOT pickup was in furtherance of providing sign maintenance, a discretionary function that entitles it to immunity under subsection (d) of section 11-46-9(1). In the alternative, MDOT argues that subsections (a) and (e), as well as subsections (v) and (w) of section 11-46-9(1) provide MDOT with immunity in this case.

¶8. During discovery, both Timothy and Robert provided deposition testimony. In his deposition, Timothy stated that the pickup was parked in the southbound lane, obstructing southbound traffic. Timothy also stated that Robert and Samuel had left the doors of the pickup open as they stood near the rear of the truck. According to Timothy, after he saw the pickup, he determined that there was no northbound traffic and moved into the northbound lane "to get around" the pickup. After he moved into the northbound lane, Samuel and Robert "got in the [pickup], and as [he] was going around them, they [ran] into the passenger fuel tank [of his logging truck,] . . . [causing his truck] to jackknife and go off [a] bank." He believed that "if [Robert] wouldn't have moved [the pickup], there wouldn't have ever been [a] wreck."

¶9. During his deposition, Robert recalled that, on the day of the collision, either he or Samuel had activated the warning lights on the pickup. Robert stated that the lights were visible from "all the way around." According to Robert, before the collision occurred, the pickup was parked entirely on the shoulder of the southbound lane facing south—not in the highway as Timothy contends. Robert stated that after he and Samuel had finished reading the sign's GPS coordinates, he drove the truck from the southbound shoulder into the

5

northbound lane of the highway. Robert further stated that the collision occurred after he had almost completely entered the northbound lane. Robert believed that despite having had sufficient time and distance to do so, Timothy failed to reduce his speed or to stop the logging truck.

¶10. As stated, MDOT argues in its brief, that it is entitled to immunity under subsections (a), (d), (e), (v), and (w) of section 11-46-9(1). However, MDOT, as a part of its motion for summary judgment, did not plead or allege the applicability of subsections (v) and (w); therefore, we pretermit discussion of these subsections as a basis for supporting the grant of summary judgment. *See Johnson v. Alcorn State Univ.*, 929 So. 2d 398, 406-07 (¶31) (Miss. Ct. App. 2006) (holding that "[a]ppellate courts may not rule upon material matters which the trial [court] did not have the opportunity to judge"). Also, since we find subsections (a) and (e) inapplicable on the facts, we only discuss subsection (d), the discretionary-function exemption.

¶11. "[A] function or duty is discretionary 'when an official is required to use his own judgment or discretion[.]'" *Estate of Carr ex rel. Macfield v. City of Ruleville*, 5 So. 3d 455, 457 (¶6) (Miss. Ct. App. 2008) (citing *Harris v. McCray*, 867 So. 2d 188, 191 (¶12) (Miss. 2003)). "A function is considered ministerial 'if the duty is one which has been positively imposed by law and its performance [is] required at a time and in a manner or upon conditions which are specifically designated, the duty to perform under the conditions specified not being dependent upon the officer's judgment or discretion.'" *City of Ruleville*,

5 So. 3d at 457 (¶6) (citation omitted). The Mississippi Supreme Court has recognized that although one statute may prescribe a function, another statute may "carve[] out a particular exception for . . . certain activit[ies]" performed in furtherance of that function, thereby making the related activities discretionary. *Little v. Miss. Dep't of Transp.*, 129 So. 3d 132, 136 (¶9) (Miss. 2013) (citation omitted).

¶12.    Mississippi Code Annotated section 65-1-65 (Rev. 2012) requires MDOT "to organize an adequate and continuous patrol for the maintenance, repair, and inspection of all of the of the state-maintained state highway system, so that said highways may be kept under proper maintenance and repair at all times." Thus, MDOT has a ministerial duty to maintain the state highways.

¶13.    Mississippi Code Annotated section 63-3-303 (Rev. 2013)[3] makes MDOT's placement and maintenance of traffic-control devices a discretionary function. The road sign in question is a traffic-control device as defined by Mississippi Code Annotated section 63-3-133(a) (Rev. 2013).

¶14.    Notwithstanding the provisions of sections 63-3-303, the act giving rise to the injuries

---

[3] Section 63-3-303 states:

The commissioner of public safety and the state highway commission shall place and maintain such traffic-control devices conforming to its manual and specifications, upon all state and county highways as it shall deem necessary to indicate and to carry out the provisions of this chapter or to regulate, warn, or guide traffic. No local authority shall place or maintain any traffic-control device upon any highway under the jurisdiction of the commissioner of public safety and the state highway commission except by the latter's permission.

here is not the placement or maintenance of a traffic-control device—but rather Robert's alleged negligent operation of the pickup. And although Robert may have been performing a discretionary function on the day of the collision, Mississippi law does not authorize governmental employees to violate traffic regulations en route to and from the site at which a discretionary function is performed.

¶15. Mississippi Code Annotated section 63-3-205 (Rev. 2013) excepts two categories of governmental employees from strict adherence to traffic regulations: (1) "persons, teams, motor vehicles and other equipment . . . actually engaged in work upon the surface of a highway," and (2) drivers of authorized emergency vehicles. On the day of the collision, Robert did not fall within either of these exceptions, and his duty to adhere to applicable traffic regulations was in no way discretionary. Consequently, the circuit court erred in finding MDOT immune under section 11-46-9(1)(d). Further, based on the evidence presented in support of and against MDOT's summary-judgment motion, we find that there are genuine issues of material fact with respect to how the accident occurred. Therefore, we find that summary judgment was improperly granted.

¶16. **THE JUDGMENT OF THE CIRCUIT COURT OF NOXUBEE COUNTY IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.**

**LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.**